THERESA BOURQUE ET AL. *v.* COMMISSIONER
OF WELFARE

APPELLATE DIVISION OF THE CIRCUIT COURT

FILE No. CV 11-7012-5485

Argued March 13—decided May 12—reargued September 11—Per Curiam filed December 1, 1972

*Robert K. Killian,* attorney general, and *Edward F. Pasiecznik,* assistant attorney general, for the appellant (defendant).

*Raymond R. Norko,* of Danielson, for the appellees (plaintiffs).

DEARINGTON, J.  On July 11, 1969, the husband of the named plaintiff, hereinafter referred to as the plaintiff, obtained a divorce from her on a cross complaint at a session of the Superior Court held at Putnam.  There was one minor child, Theresa, the only issue of the marriage, the coplaintiff acting by her mother.  In the decree the court ordered "that the defendant [father] pay to the plaintiff $25.00 per week for the support of said minor child through the Family Relations Division.  Defendant to maintain in force medical and hospital insurance in favor of the child."  The plaintiff had four other minor children and was receiving welfare assistance for them under the aid to families with dependent children program.  The welfare department, in computing the amount to which the family was entitled, treated the support payments received by Theresa from her father as a resource available to the family.  The family needs were computed at $418.30 a month;

in including the amount received by Theresa in the computation, however, the allowance was reduced to $309.97 a month. The plaintiff, following the divorce, applied to the welfare department, requesting that Theresa be removed from the AFDC program. Following a hearing, the fair hearing officer directed the district office "to remove the child, Theresa, from AFDC as income exceeds need." The child received monthly payments of $108.33. Thereafter, an appeal was taken to the Circuit Court as provided in § 17-2b of the General Statutes, claiming that the defendant commissioner acted arbitrarily and illegally.

The trial court, following a hearing, directed that the child be removed from AFDC since the child's income exceeded her need. In so doing, the court affirmed the action of the fair hearing officer. The court further found that the fair hearing officer acted illegally in deciding that the income received by the child in excess of her need must be applied to meet the mother's need. It directed that the child's support payments be deleted from the computation of the family's needs. The commissioner has appealed from this decision, assigning eleven errors, three of which are briefed and to which we direct our attention; Maltbie, Conn. App. Proc. § 167; the others being considered as abandoned. These are as follows: (1) The trial court erred in finding that the fair hearing officer acted illegally in deciding that any additional income must be applied to meet the needs of the child's mother; (2) the court erred in directing the district office to remove the child's income from the AFDC budget and to recompute the budget retroactively to July 19, 1969; and (3) the court erred in refusing to respond to the defendant's request for a finding of facts, since the present appeal is affected by a prior appeal, docket No. CV 11-703-4813.

Section 17-2b (b) provides: "The court, upon such appeal [from a decision of the fair hearing officer] shall determine whether the commissioner has acted illegally or so arbitrarily and unreasonably as to abuse his discretion, and said court [Circuit Court], in accordance with such determination, . . . may modify or revise the decision appealed from." "This means no more than that the court may decide whether the commissioner, upon the facts before him, has mistaken the law, and so has acted illegally, or whether he has been arbitrary to the extent of abusing his discretion. . . . A court cannot, constitutionally, do more." *Dempsey* v. *Tynan,* 143 Conn. 202, 206.

The transcript of the fair hearing, together with the memorandum of decision of the fair hearing officer and of the trial court and other documents relating to the matter, was filed with the pleadings and made a part of the record. At the fair hearing conducted by the fair hearing officer, the reporter, the plaintiff and her attorney, and the case worker were present.

The memorandum of decision of the fair hearing officer cites the pertinent law to be §§ 17-82d and 17-320 of the General Statutes and indexes 330, 331 and 370 of volume 1, chapter III, of the Connecticut State Welfare Manual, and then made the following finding: (1) The plaintiff's daughter has income of $108.33 a month; (2) this income is sufficient to meet the child's needs; (3) the child is legally liable for her mother.

In the defendant's first assignment of error it is contended, on the basis of the foregoing statutes and regulations, that Theresa is a part of the family unit and any income received by her may be considered in determining the total family needs. The material part of § 17-82d provides: "The commis-

sioner shall in determining need, take into consideration any available income and resources of the individual claiming assistance." Neither the plaintiff nor Theresa is claiming assistance in this proceeding; on the contrary, they are requesting that Theresa be removed from assistance under the AFDC program. The pertinent part of § 17-320 provides: "When any person becomes poor and unable to support . . . herself and family, and has . . . , if such person is under sixty-five, a child able, jointly or severally, to provide such support, it shall be provided by . . . [such child]." Whether Theresa could be held responsible under this section for any part of her mother's support is not the issue before us. Neither of the plaintiffs was summoned into court to answer to a petition seeking support, as required by this statute.

Index 330 provides in part: "In the determination of financial need, it is necessary to relate the total expenses of family maintenance which are recognized as essential by the Department, to the available income of the applicant to meet all or any part of these expenses." Index 331 provides: "All available income, in cash or in kind, is applied against budgeted expenses. Cash income includes wages, pensions, work-related benefits and other regularly recurring or predictable and computable income, as well as retroactive payments of benefits received in a lump sum. . . ." Upon these regulations, it is argued that the support payment to Theresa was a resource available in determining the financial need of the entire family.

In considering these regulations it is necessary to consider the legal import of an order to support a child directed by the court in a divorce action. We have been unable to find a reported case in this jurisdiction bearing directly on this subject. In *Steinmann* v. *Steinmann,* 121 Conn. 498, the court

ordered support for a minor child, stating (p. 503) that the award was for the support of the minor child to cover her needs, and continued (p. 504): "The award is to the mother of a sum to be used by her for the support of the child. Where such an award is made there is, to be sure, a possibility that the mother may not use the money for the purpose for which it is allowed .... It was within the power of the trial court to condition such an allowance upon the giving by the mother of security for the proper use of the money and the return to the defendant [father] of any amount not expended for the support of the child when she becomes twenty-one ...." We construe this to mean that where an award is made specifically for the support of a minor child the allowance is to be used for the use and benefit of that child.

In the instant case the payments were to be made through the family relations division of the Superior Court. The fact that the division might, in turn, make payments to the mother would not alter the fact that the benefits were for the use of the child. Moreover, only the Superior Court can modify the terms of a support payment. *Lilley* v. *Lilley,* 125 Conn. 339, 342.

The federal statute which regulates the distribution of benefits is 42 U.S.C. § 602 (a) (7), of which we take judicial notice. *Theron Ford Co.* v. *Home Owners' Loan Corporation,* 120 Conn. 250, 252. This is proper since Connecticut participates in the AFDC program, which is jointly financed by the state and federal governments. See Conn. Dept. Regs. §§ 17-2-26 to 17-2-28 & Statement of Purpose (wherein the standard of need for AFDC families shall be "in accordance with federal law"), 33 Conn. L.J., No. 17, p. 5. The federal statute reads: "A State plan for aid and services to needy families with children must ... (7) ... provide that the State

agency shall, in determining need, take into consideration any other income and resources of any *child* or relative *claiming aid* to families with dependent children, or of any *other individual* (living in the same home as such child and relative) whose needs the State determines should be considered in determining the *need of the child* or relative claiming such aid, as well as any expenses reasonably attributable to the earning of any such income . . . ." (Italics supplied.)

As we read this, it authorizes state agencies administering the plan to consider resources of a child in determining that child's needs but does not authorize that resources available only to that child should be related to the total expenses of the family maintenance and thus be used to meet all or any part of the family's expenses. Theresa's father had no legal duty to support the rest of the family, and his support payments cannot be considered a resource available to the family.

In *Gilliard* v. *Craig*, 331 F. Sup. 587, 593, a situation was presented almost identical with the case at bar, and it was held, one judge dissenting, that court-ordered support payments by a divorced father to his minor child living with six other minors, all of the same mother but a different father, could not be considered as a resource available to the family at large under the AFDC program.

The trial court in the instant case, in its memorandum of decision, further noted that legally liable relatives with income of less than $250 a month are not required to make any payments to destitute relatives. 1 Conn. State Welfare Manual, c. III, index 344.1. Such an exemption does not appear to have been considered by the fair hearing officer in her memorandum of decision.

We conclude that under the most rational interpretation of 42 U.S.C. § 602 (a) (7), and under our state laws and regulations, referred to above, it is improper to include as family resources, in computing the family's needs, the support payments ordered by the Superior Court for the individual benefit of Theresa.

It is further claimed that error was committed by the trial court in removing Theresa's support payments from the AFDC budget retroactively to July 19, 1969, the date of commencement of support payments under order of the Superior Court. Connecticut welfare regulations applicable to fair hearing procedures provide that "a decision [at a fair hearing] in favor of the applicant applies retroactively to the date the incorrect action was taken." 1 Conn. State Welfare Manual § 6300 (7); see federal Handbook of Public Assistance Admin., pt. 4 § 6200 (K). This provision reflects the federal policy as outlined by the United States department of health, education and welfare in a letter to all state welfare agencies: "Federal policy provides that effective July 1, 1968, corrective payments are to be made retroactively to the date incorrect action was taken when a hearing decision is favorable to the claimant . . . ." State letter No. 1048 to State Agencies Administering Approved Public Assistance Program (September 30, 1968). Under the scheme of cooperative federalism for carrying out the AFDC program, state plans for distribution of aid must conform with federal laws and regulations, in order for federal funds to be received. 42 U.S.C. §§ 602, 1302. The trial court was correct in ordering recomputation retroactive to July 19, 1969.

Finally, the defendant assigns error in the denial of his request for a finding. On July 9, 1971, the trial court filed its memorandum of decision. On

July 19, the defendant filed a notice of appeal in which no finding was requested. On August 9, the defendant filed a request for a finding, seeking to have the court set forth facts relating to a prior appeal of the plaintiff concerning the same subject matter as is recited in the instant appeal. The plaintiff moved to expunge the request for a finding. The appeal came to this court at its session in October, 1971, and since no action had been taken on the motion to expunge we remanded the case for that purpose. Thereafter, a hearing was held in the trial court and the motion to expunge was denied as well as the request for a finding. The trial court reasoned that, since there had been no evidence, a finding was not required, citing such cases as *Winchester Repeating Arms Co.* v. *Radcliffe,* 134 Conn. 164, 169, and *Gulf Oil Corporation* v. *Board of Selectmen,* 144 Conn. 61, 64; see *Biz* v. *Liquor Control Commission,* 133 Conn. 556, 557. Moreover, the defendant failed to comply with Practice Book § 979, which provides that a request for a finding shall be added to an appeal, otherwise the appellant shall be deemed to have waived his right to a finding. Because of the nature of an appeal from an administrative board we feel, however, constrained to consider this assignment at greater length.

In the defendant's proposed draft finding he sets forth, inter alia, certain material relating to prior proceedings, claiming that those proceedings encompassed the same parties and subject matter. The defendant now asserts that the court erred in not taking judicial notice of those proceedings and in not making a finding including them. The proceedings, he now argues, barred the present proceedings at the trial court level. We take judicial notice of the prior proceedings on file in the Circuit Court for the eleventh circuit, case No. CV 11-703-4813. *Aponte* v. *Rivera,* 2 Conn. Cir. Ct. 337, 339. That

record indicates that the present plaintiff, acting for herself and her five children, applied to the district office of the welfare department, requesting that Theresa be removed from the AFDC program. The plaintiff's application was denied and she requested a fair hearing. A hearing was held and the ruling of the district office was affirmed on December 3, 1970. The plaintiff did not appeal to the Circuit Court as provided by § 17-2b but rather took an appeal to the United States District Court in this district, where the case was dismissed for lack of jurisdiction. The plaintiff then returned to the Circuit Court; since, however, she had not taken an appeal to the trial court within thirty days (§ 17-2b), a motion to erase for want of jurisdiction was granted and judgment was rendered for the defendant. The plaintiff then commenced the instant proceedings, claiming that the prior proceedings had not been heard on the merits and therefore she had the right to institute new proceedings. No authority is cited to support this claim. Section 52-592 of the General Statutes in part provides: "If any action, commenced within the time limited by law [here thirty days], has failed one or more times to be tried on its merits because . . . [it] has been erased from the docket for want of jurisdiction, . . . the plaintiff . . . may commence a new action for the same cause at any time within one year after the determination of the original action . . . ." This remedy, however, does not apply to proceedings originating in administrative hearings. *Carbone* v. *Zoning Board of Appeals,* 126 Conn. 602, 608; *Holloway Bros., Inc.* v. *Avon,* 26 Conn. Sup. 164, 168.

While it is true that the prior proceedings were referred to in the fair hearing transcript in the instant case, no significance was attached to the prior proceedings, and the finding (conclusions) of the fair hearing officer did not reflect the prior proceed-

ings. The import of the prior proceedings appears to have been waived. The plaintiff then appealed to the trial court and the defendant filed an answer. Nowhere in the defendant's answer does it appear that the prior proceedings were claimed to bar the instant proceedings, nor was the issue raised by way of a motion to erase or a plea in abatement. It was not until after the trial court's memorandum of decision had been filed that the defendant, for the first time, claimed that the prior proceedings barred the present proceedings and then requested the trial court to take judicial notice of the prior proceedings. "Matter which it is claimed the court should judicially notice should be called to its attention by the party seeking to take advantage of the matter so that, if there is ground upon which it may be contradicted or explained, the adverse party will be afforded an opportunity to do so." *State ex rel. Capurso* v. *Flis,* 144 Conn. 473, 477, and cases cited. The judge in the instant proceedings was other than the judge in the prior proceedings. In *Carbone* v. *Zoning Board of Appeals,* supra, 607, the court said: "If such an appeal were taken after the time allowed, the appellee would have the choice either of failing to object to the proceeding and thus disregarding the limitations fixed by the Legislature, or of pleading in abatement . . . ." Since the defendant raised no question of limitation in the trial court until after its decision was filed, we are constrained to conclude that the issue was waived. In these circumstances a finding, for the purpose sought, would be of no avail to the defendant, and the trial court was correct in denying the request for a finding. *Divirgilio* v. *Liquor Control Commission,* 134 Conn. 143, 144.

There is no error.

In this opinion DiCenzo and Jacobs, Js., concurred.

## MEMORANDUM ON MOTION TO REARGUE

PER CURIAM. This case was originally argued before this court on March 13, 1972, and we found no error in the judgment rendered for the plaintiff by the trial court. Thereafter, the defendant moved to reargue, and the motion was granted. In his brief on reargument, the defendant raises five issues which may be reduced to two: First, whether the opinion should be corrected to indicate the obligation of a child to support her mother from income received by the child in the form of support payments arising from a divorce action, which payments are claimed to be in excess of the child's needs under welfare department standards. Second, whether the opinion should be corrected to determine the "effect of judicial notice where a sovereign statutory granted right is not perfected by performing acts which are conditions precedent to creating the right."

The defendant took issue with the trial court's finding that the fair hearing officer acted illegally in deciding that the child's income in excess of her need must be applied to meet the mother's need. This finding by the trial court appears to be the gravamen of the defendant's first four issues in his reargument; that is, whether the welfare department is entitled to take into consideration the child's support payments in excess of her needs in computing the assistance paid the mother by the state.

The defendant further argues that the child, under the statutes and under welfare department standards, is obligated to support her mother, and therefore the child's support payments in excess of her needs may be considered available income by the welfare department in determining the needs of the mother. In this respect, the defendant contends that the legislative mandates contained in §§ 17-82d

and 17-82e of the General Statutes were ignored in our prior opinion. It is our opinion that those sections are applicable only when a person applies for aid. Here, the plaintiff was not applying for aid. As noted in the fair hearing officer's memorandum of decision, the plaintiff was seeking to have the child removed from the AFDC program.

General Statutes § 46-26 (support of children in divorce action) provides that the Superior Court may, when a minor child is involved, make such decree "for the maintenance of such child as it considers just." We cited *Steinmann* v. *Steinmann*, 121 Conn. 498, wherein support was awarded a minor child in a divorce action.[1] It seems clear to us that support awarded a child in a divorce action is for the sole benefit of the child. *Gilliard* v. *Craig*, 331 F. Sup. 587, cited in our opinion, was an action by AFDC recipients challenging state (North Carolina) and local administrative authorities which had reduced total family payments because of support payments to one child thereof. The court said (p. 592): "She [mother] faces the Hobson's choice of applying Davis's [father's] contribution to benefit only Samuel Davis, Jr., or of *improperly* using some or all of Davis's contribution for the benefit of *herself* and the other children." (Italics supplied.) While it is true *Gilliard* was concerned with a family unit, it nevertheless described the use of the child's support payment by the mother for herself as improper. It remains our opinion that the welfare department cannot consider the support payment of the child or any part thereof either as a resource or as income available to meet the mother's needs. To do so would work an unlawful appropriation of the funds of both father and daughter and violate the intent of § 46-26. Of course, the mother, ordinarily, should be allowed

---

[1] See p. 689, supra.

to decide how the sums should be spent for the benefit of the child. 24 Am. Jur. 2d, Divorce and Separation, § 872.

We now turn to the defendant's second issue. This relates to a prior hearing before a fair hearing officer and an appeal from the rulings to the trial court.[2] The defendant in his reargument now contends that the trial court was without jurisdiction in the present proceedings because of the judgment of erasure entered in the prior case. The question of jurisdiction does not appear to have been raised in or considered by the trial court, nor was it brought to our attention until reargument; however, since it is jurisdictional, it must be met. *Tellier* v. *Zarnowski,* 157 Conn. 370, 373. "Every presumption which favors the jurisdiction of the court should be indulged." *Barney* v. *Thompson,* 159 Conn. 416, 420.

We have examined the record in the prior case as it relates to action in the Circuit Court, and it consists solely of the plaintiff's appeal from the determinations of the fair hearing officer together with the defendant's motion to erase, which was granted, presumably, for want of jurisdiction apparent upon the face of the pleadings. An erasure from the docket "was not a judgment in the ordinary sense of that word. The rights of the parties in respect to the subject matter of the claim were not fixed by it . . . ." *Woodruff* v. *Bacon,* 35 Conn. 97, 102; see Stephenson, Conn. Civil Proc. (2d Ed.) § 153. Ordinarily, in an action erased from the docket for want of jurisdiction, a new action for the same cause may be commenced within one year. General Statutes § 52-592. In this type of proceeding, however, an appeal from an administrative board is not an "action" within the meaning of that statute. *Carbone* v. *Zoning Board of Appeals,* 126 Conn. 602, 607.

[2] See p. 694, supra.

*Carbone* was concerned with an appeal taken after the time allowed for such an appeal had expired, whereas here we are concerned with a new proceeding commenced after the time for appeal of the prior proceeding had expired. We remain of the opinion, however, that the reasoning in *Carbone* is applicable in the present situation; that is, the defendant had the choice of objecting to the proceeding or disregarding the limitation fixed by the legislature. Since the defendant made no objection, we conclude the latter alternative came into operation and the issue of jurisdiction was removed.

We reaffirm the judgment of the trial court.

DEARINGTON, JACOBS and KINMONTH, Js., participated in this decision.