EDWARD J. CHIEPPO *v.* ROBERT E. MCMICHAEL, INC., ET AL.

HOUSE, C. J., LOISELLE, BOGDANSKI, LONGO and BARBER, Js.

Argued October 8—decision released December 2, 1975

*Adrian W. Maher,* with whom, on the brief, was *Kevin J. Maher,* for the appellants (defendants).

*Robert N. Schmalz,* with whom, on the brief, was *Kevin Gaynor,* for the appellee (plaintiff).

LOISELLE, J. The plaintiff, Edward J. Chieppo, suffered personal injuries on September 25, 1969, while traveling from his place of employment to his home. On September 8, 1972, the compensation commissioner entered a finding and award in favor of the plaintiff. On September 14, 1972, the defendants appealed from the finding and award to the Superior Court. Although the record contains no indication that the plaintiff filed a general appear-

ance in the Superior Court, the memorandum of decision of the Court of Common Pleas notes that the appearance was made. Section 31-301 of the General Statutes, as amended by Public Acts 1972, No. 108, § 6, enacted April 29, 1972, provided for appeals from the awards of the compensation commissioner to the Court of Common Pleas, effective September 1, 1972. Prior to that date, appeals were made to the Superior Court.

On October 3, 1972, the defendants moved to transfer their appeal to the Court of Common Pleas "under the provisions of Section 776 of the Practice Act in view of Public Act 108—Section 6—Section 31-301 of the . . . General Statutes." The Superior Court granted the motion on October 13, 1972. The Court of Common Pleas subsequently found that it was without jurisdiction to consider the appeal because the defendants failed to comply with the provisions of § 31-301. The defendants have appealed the judgment of dismissal.

The defendants assert that their appeal was properly taken to the Superior Court under the provisions of § 31-301 in effect on September 25, 1969. It is their claim that the contract of employment with the plaintiff incorporated the Workmen's Compensation Act, and that the act, on the day of the injury, provided for an appeal to the Superior Court. They further claim that since the Superior Court had jurisdiction of the appeal, it properly transferred the appeal to the Court of Common Pleas under § 164[1] of the Practice Book. Alternatively, the defendants assert that if the appeal

[1] Although § 776 of the Practice Book (repealed December 31, 1974) was substantially the same rule as § 164, the latter section was the one relied upon as it appears in the Superior Court rules and not in the Common Pleas Court rules.

were taken to the wrong court, then the provisions of General Statutes § 52-32[2] provided the necessary authority to transfer the appeal.

The contract of employment incorporates the Workmen's Compensation Act, hereinafter referred to as the act, and provides the basis for an employee's recovery for an injury suffered in the course of employment. *Vegliante* v. *New Haven Clock Co.,* 143 Conn. 571, 580, 124 A.2d 526; *Stulginski* v. *Cizauskas,* 125 Conn. 293, 299, 5 A.2d 10; *Powers* v. *Hotel Bond Co.,* 89 Conn. 143, 145–46, 93 A. 245. The rights and obligations of both parties to the contract are fixed and determined by the contractual and statutory provisions in force at the time the employee is injured. *Rossi* v. *Thomas F. Jackson Co.,* 120 Conn. 456, 460, 181 A. 539; *Walsh* v. *A. Waldron & Sons,* 112 Conn. 579, 582, 153 A. 298. The defendants maintain that, under this reasoning, the provisions establishing the appeal procedure became vested on the day of the plaintiff's injury.

---

[2] "[General Statutes] Sec. 52-32. TRANSFER OF CAUSES BROUGHT TO THE WRONG COURT. Any civil action brought to the wrong court may, upon motion, be removed to a court having jurisdiction, either before or after the filing of a plea in abatement. The order of removal shall be conditioned upon the payment of a fee of thirty dollars to the clerk of the court where the action was erroneously brought. A certified copy of such order shall be served on the adverse party in the same manner as other civil process and a similar copy lodged by the party securing it in the court to which the cause is removed. Upon service as aforesaid and the payment of the entry fee as in other cases, such court shall have jurisdiction as though such action had been commenced by process in the usual manner. Any party upon whom such order has been served may enter his appearance within twelve days from the date of such service, and the failure to so enter shall have the same effect as a like failure in cases originally commenced in such court. When any cause is thus removed, all rights of attachment and all rights growing out of the filing of a lis pendens shall be preserved as of their original date."

The method of appeal from the compensation commissioner, however, is not controlled by the statute in effect on the day of the injury. The focus of § 31-301 is not upon the rights and obligations as between the parties, but upon the duties and powers of the compensation commissioner and the court to which the appeal is taken. The change in the appellate procedure affected neither the employee's right to compensation nor the employer's obligation to pay it. The legislature may regulate the remedy and the method of procedure under a past as well as a future contract so long as it does not impose new restrictions upon the enforcement of a past contract so as materially to lessen its value and benefit to either party. *Everett* v. *Ingraham,* 150 Conn. 153, 157, 186 A.2d 798; *O'Connor* v. *Hartford Accident & Indemnity Co.,* 97 Conn. 8, 15, 115 A. 484. The court was not in error in the ruling that an appeal from an award of the compensation commissioner taken after September 1, 1972 should have been taken to the Court of Common Pleas and that the defendants' appeal to the Superior Court, on September 14, 1972, was to the wrong court.

The order of the Superior Court transferring the appeal to the Court of Common Pleas was without effect. Under § 164 of the Practice Book, the Superior Court may order the transfer of a pending cause to the Court of Common Pleas. As the appeal was taken to the wrong court, the Superior Court was without jurisdiction and was powerless to make any transfer. *Carter* v. *Carter,* 147 Conn. 238, 245, 159 A.2d 173; *Wojculewicz* v. *Cummings,* 143 Conn. 624, 628, 124 A.2d 886; *Woodmont Assn.* v. *Milford,* 85 Conn. 517, 523, 84 A. 307; see *Fidelity Trust Co.* v. *Lamb,* 164 Conn. 126, 133–34, 318 A.2d 109. That the plaintiff may have filed a general appearance

in the Superior Court is of no moment. The defect is in the jurisdiction over the subject matter, not in the jurisdiction over either the person or the process, and, as such, it is a matter of law and can be neither waived nor conferred by consent. *Hughes* v. *Town Planning & Zoning Commission,* 156 Conn. 505, 509, 242 A.2d 705; *Reed* v. *Reincke,* 155 Conn. 591, 598, 236 A.2d 909.

In the alternative, the defendants claim that the order transferring the appeal from the Superior Court to the Court of Common Pleas was within the power granted to the Superior Court by § 52-32. This statute extends the jurisdiction of a court to which a civil action is mistakenly brought to the extent of giving the court power to order its removal to the proper court, and when the removal is accomplished, the civil action becomes valid from its inception. *Felletter* v. *Thompson,* 133 Conn. 277, 279, 50 A.2d 81; *Wooley* v. *Williams,* 105 Conn. 671, 674, 136 A. 583.

Section 52-32 provides, in part: "Any civil action brought to the wrong court may, upon motion, be removed to a court having judisdiction . . . ." Whether an appeal from a compensation commissioner's award is a "civil action" determines the applicability of § 52-32.

The first case interpreting the Workmen's Compensation Act of 1913 established the character of an appeal from a compensation commissioner's award. The court in *Powers* v. *Hotel Bond Co.,* 89 Conn. 143, 93 A. 245, said (p. 149): "We hold such 'appeal' to be an original application to the Superior Court to exercise its appropriate judicial power in respect to acts done by the administrative tribunal

in excess of its power, or in the unlawful abuse of that power." See also *Moynihan's Appeal,* 75 Conn. 358, 360, 53 A. 903, 1123.

In *Slattery* v. *Woodin,* 90 Conn. 48, 96 A. 178, in holding that appeals and controversies in the Court of Probate are not civil actions, this court stated (p. 50): "The accepted meaning of the term 'civil action' in this State is very well illustrated by the provision of our Practice Act (General Statutes, § 607) [now § 52-91] that 'there shall be but one form of civil action, and the pleadings therein shall be as follows: The first pleading on the part of the plaintiff shall be known as the complaint, and shall contain a statement of the facts constituting the cause of action, and a demand for the relief to which he supposes himself to be entitled.'" Appeals made pursuant to § 31-301 are neither commenced by service of process nor controlled by rules of pleading. The procedure of the appeal is to be the same as the procedure in an appeal from the Court of Common Pleas to the Superior Court.[3] This procedure is distinct from the ordinary concept of a civil action.

In *Bank Building & Equipment Corporation* v. *Architectural Examining Board,* 153 Conn. 121, 214 A.2d 377, and *Carbone* v. *Zoning Board of Appeals,* 126 Conn. 602, 13 A.2d 462, it was held that appeals, in the first case, from the state's architec-

[3] The legislature, by Public Acts 1967, No. 692, § 2, added a provision specifying the procedure for an appeal under § 31-301. That amendment required the procedure to "be the same as the procedure employed in an appeal from the superior court to the supreme court." The applicable procedure for the present appeal was that for appeals from the Court of Common Pleas to the Supreme Court. Public Acts 1972, No. 108, § 6. The present requirement was provided by Public Acts 1974, No. 74-183, § 268.

tural examining board and, in the second case, from a zoning board of appeals, were not "actions" and "civil actions" within the meaning of § 52-592 and § 52-593 respectively. In making those determinations this court looked to the appeal provisions and to the purpose of the statutes creating the appeals.

The intention of the framers of the act was to establish a speedy, effective and inexpensive method for determining claims for compensation. *Taylor* v. *St. Paul's Universalist Church,* 109 Conn. 737, 147 A. 671. To carry out that objective, the provisions of the act allow a period of ten days in which to appeal the compensation commissioner's award. General Statutes § 31-301. If no appeal is taken during that period, the award becomes final and enforcible "in the same manner as a judgment of the superior court." General Statutes § 31-300. The clerk of the Court of Common Pleas notifies the adverse party of the appeal. No costs are taxed and neither party is liable for any fees or costs, unless the appeal is either frivolous or taken for the purpose of vexation or delay. Finally, actions brought under § 31-301 are privileged over most actions on the assignment list.

Section 52-32, however, requires the payment of thirty dollars as a condition to its use. It further requires that notice of the removal order be served on the adverse party as in other civil process. Furthermore, the obvious benefits of § 52-32, preservation of seniority in rights of attachment and in filing a lis pendens, are inapplicable to the plaintiff. Compensation commissioners may issue writs of attachment in the event the employer fails to secure compensation pursuant to § 31-284 and § 31-285. General Statutes § 31-323.

The compensation commissioner is an administrator empowered to enforce the statutes concerning workmen's compensation. *Powers* v. *Hotel Bond Co.*, supra, 148. The rationale in *Carbone* and *Bank Building* is equally pertinent to an appeal under § 31-301. It is apparent from the language that the General Assembly intended to set forth an appeal procedure distinct from a "civil action" as the term is used in § 52-32. *Bank Building & Equipment Corporation* v. *Architectural Examining Board*, supra, 125.

Because of its determination of the jurisdictional issue involved, this court is compelled to find no error. It must be noted, however, that on several occasions concern has been expressed over the delay in publishing public acts until after their effective dates.[4] Unfairness to the citizens of this state and the efficient administration of justice are involved. This case dramatically illustrates the consequences attending such delay.

There is no error.

In this opinion the other judges concurred.

---

[4] Twenty-Fourth Report of the Judicial Council of Connecticut, p. 11 (December, 1974); Twenty-Third Report of the Judicial Council of Connecticut, p. 18 (December, 1972); Twenty-Second Report of the Judicial Council of Connecticut, p. 24 (December, 1970).